UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

RUTH EVELYN DIAZ,

                Plaintiff,

       v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

<u>DECISION & ORDER</u>

18-CV-6224P

## **PRELIMINARY STATEMENT**

       Plaintiff Ruth Evelyn Diaz ("Diaz") brings this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying her application for Disability Insurance Benefits ("DIB"). Pursuant to 28 U.S.C. § 636(c), the parties have consented to the disposition of this case by a United States magistrate judge. (Docket # 8).

       Currently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Docket ## 10, 14). For the reasons set forth below, I hereby vacate the decision of the Commissioner and remand this claim for further administrative proceedings consistent with this decision.

**DISCUSSION**

**I.      Standard of Review**

This Court's scope of review is limited to whether the Commissioner's determination is supported by substantial evidence in the record and whether the Commissioner applied the correct legal standards. *See Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004) ("[i]n reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision"), *reh'g granted in part and denied in part*, 416 F.3d 101 (2d Cir. 2005); *see also Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) ("it is not our function to determine *de novo* whether plaintiff is disabled[;] . . . [r]ather, we must determine whether the Commissioner's conclusions are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard") (internal citation and quotation omitted). Pursuant to 42 U.S.C. § 405(g), a district court reviewing the Commissioner's determination to deny disability benefits is directed to accept the Commissioner's findings of fact unless they are not supported by "substantial evidence." *See* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive"). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation omitted).

To determine whether substantial evidence exists in the record, the court must consider the record as a whole, examining the evidence submitted by both sides, "because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). To the extent

they are supported by substantial evidence, the Commissioner's findings of fact must be sustained "even where substantial evidence may support the claimant's position and despite the fact that the [c]ourt, had it heard the evidence *de novo*, might have found otherwise." *Matejka v. Barnhart*, 386 F. Supp. 2d 198, 204 (W.D.N.Y. 2005) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983)).

A person is disabled for the purposes of SSI and disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A). In assessing whether a claimant is disabled, the ALJ must employ a five-step sequential analysis. *See Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (*per curiam*). The five steps are:

(1) whether the claimant is currently engaged in substantial gainful activity;

(2) if not, whether the claimant has any "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities";

(3) if so, whether any of the claimant's severe impairments meets or equals one of the impairments listed in Appendix 1 of Subpart P of Part 404 of the relevant regulations;

(4) if not, whether despite the claimant's severe impairments, the claimant retains the residual functional capacity [("RFC")] to perform his past work; and

(5) if not, whether the claimant retains the [RFC] to perform any other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) & 416.920(a)(4)(i)-(v); *Berry v. Schweiker*, 675 F.2d at 467. "The claimant bears the burden of proving his or her case at steps one through four[;] . . . [a]t step five the burden shifts to the Commissioner to 'show there is other gainful work in the national economy [which] the claimant could perform.'" *Butts v. Barnhart*, 388 F.3d at 383 (quoting *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998)).

II.     **Diaz's Contentions**

Diaz contends that the ALJ's determination that she is not disabled is not supported by substantial evidence and is the product of legal error. (Docket ## 10-1, 15). Specifically, Diaz argues that the ALJ erred at step two of the sequential analysis by failing to properly evaluate the severity of Diaz's fibromyalgia diagnosis. (Docket ## 10-1 at 16-20; 15 at 1-4). In addition, Diaz asserts that the ALJ failed to give good reasons for discounting the opinion of Diaz's treating physician, Dr. Shirley Cirillo ("Cirillo"). (Docket ## 10-1 at 21-24; 15 at 5-6). Finally, Diaz claims that the ALJ erred by failing to explain why she did not incorporate into her RFC assessment portions of the opinion of Diaz's primary care physician, despite purporting to afford it "great weight." (Docket # 10-1 at 24-25).

III.    **Analysis**

  A.    **The ALJ's Step Two Determination**

I turn first to Diaz's argument that the ALJ erred in finding that her diagnosed fibromyalgia was not a "severe" impairment at step two of the sequential analysis because, in Diaz's view, the ALJ "failed to evaluate the condition according to the appropriate legal standards." (Docket ## 10-1 at 16-20; 15 at 1-4). Specifically, Diaz contends that the medical

4

record supports a finding that Diaz's fibromyalgia was a medically determinable impairment based on the guidance set forth in Social Security Rule ("SSR") 12-2p, 2012 WL 3104869 (July 25, 2012). (Docket # 10-1 at 17-20).

Disability may be found only if a claimant has a medically determinable impairment. *See* 20 C.F.R. § 404.1505(a). Such an impairment must "result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques" and "must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [plaintiff's] statement of symptoms." 20 C.F.R. § 404.1508.[1] The evidence that may establish a medically determinable impairment must come from "acceptable medical sources," such as licensed physicians. 20 C.F.R. § 404.1313(a).[2]

At step two of the evaluation, the ALJ must determine whether the claimant has a "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(a)(4)(ii), (c). "Only medically determinable impairments may be considered severe or non-severe." *Talbot v. Colvin*, 2015 WL 5512039, *4 (N.D.N.Y. 2015) (citing 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii)). "An impairment or combination of impairments is 'not severe' when medical and other evidence establishes only a slight abnormality or a combination of slight abnormalities that would have at most a minimal effect on an individual's ability to perform basic work activities." *Jeffords v. Astrue*, 2012 WL 3860800, *3 (W.D.N.Y. 2012) (internal quotation omitted); *see also Schifano v. Astrue*, 2013

---

[1] The current version of this regulation, which became effective March 27, 2017, is codified at 20 C.F.R. § 404.1521.

[2] This regulation has been amended since the ALJ's decision. Because the ALJ's decision predated the effective date of the amendment (March 27, 2017), the amended version of the regulation does not apply here.

5

WL 2898058, *3 (W.D.N.Y. 2013) ("[a]n impairment is severe if it causes more than a *de minimis* limitation to a claimant's physical or mental ability to do basic work activities").

"[S]ymptom-related limitations and restrictions must be considered at [] step [two] of the sequential evaluation process, provided that the individual has a medically determinable impairment(s) that could reasonably be expected to produce the symptoms." SSR 96-3p, 1996 WL 374181, *2 (July 2, 1996). If an impairment is not medically determinable, it cannot be severe within the meaning of the SSA, and "symptom-related limitations and restrictions allegedly resulting from that impairment cannot be considered at step two of the sequential process." *Huskey v. Astrue*, 2007 WL 2042504, *7 (D. Kan. 2007).

SSR 12-2p "provides guidance on how [the Commissioner] develop[s] evidence to establish that a person has a medically determinable impairment of fibromyalgia[.]" SSR 12-2p, 2012 WL 3104869, *1 (July 25, 2012). "[S]pecifically, a physician must diagnose fibromyalgia, the diagnosis cannot be inconsistent with the other evidence in the case record, and the physician must provide evidence of: (1) a history of widespread pain, at least eleven positive tender points on physical examination, and evidence that other disorders that could cause the symptoms or signs were excluded; or (2) a history of widespread pain, repeated manifestations of six or more fibromyalgia symptoms, signs, or co-occurring conditions, and evidence that other disorders that could cause these repeated manifestations were excluded." *Cooper v. Comm'r of Soc. Sec.*, 2019 WL 1109573, *4 (W.D.N.Y. 2019) (citing SSR 12-2p, 2012 WL 3104869 at *2-3). The first of these methods for determining whether fibromyalgia is a medically determinable impairment is based on the 1990 American College of Rheumatology ("ACR") Criteria for the Classification of Fibromyalgia (the "1990 ACR Criteria"). SSR 12-2p, 2012 WL

3104869 at *2-3. The second method is based on the 2010 ACR Preliminary Diagnostic Criteria (the "2010 ACR Criteria"). *Id.* at *3.

In this case, the ALJ determined at step two that Diaz had the severe impairments of asthma, migraine headaches, arthritis of the left knee, obesity, major depressive disorder, panic disorder, and unspecified anxiety disorder. (Tr. 12).[3] The ALJ also recognized that Diaz had been assessed with a variety of other conditions, including fibromyalgia, but concluded that "there ha[d] not been any significant treatment needed, and no practitioner ha[d] mentioned any ongoing and significant functional limitations associated with these conditions." (Tr. 13). Therefore, the ALJ concluded that because "these impairments have not caused more than a minimal degree of functional loss[,] they [were] not severe within the meaning of the regulations." (*Id.*).

The ALJ further concluded that Diaz's "diagnosis of fibromyalgia d[id] not satisfy the [1990 ACR Criteria] or the [2010 ACR Criteria] as required under [SSR] 12-2p and is not a severe impairment." (*Id.*). In other words, the ALJ determined that Diaz's diagnosed fibromyalgia did not constitute a medically determinable impairment. In reaching this conclusion, the ALJ stated:

> [T]he record does not include a history of widespread pain in all four quadrants of the body; at least 11 out of 18 positive tender points found bilaterally; and evidence of examinations and testing that rule out other disorders. Further, the evidence does not show six or more fibromyalgia symptoms, signs, or co-occurring conditions, such as fatigue, cognitive or memory problems, waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome; and evidence of medical exclusion of other disorders that could cause these symptoms. Although the claimant reports a history of widespread pain as noted in detail below, there is no significant evidence of tender points. Further, while she does have some fibromyalgia symptoms or co-occurring conditions as noted

---

[3] References to page numbers in the Administrative Transcript (Docket # 7) utilize the internal Bates-stamped pagination assigned by the parties.

> below, there is no significant evidence that other disorders that
> could cause these symptoms have been excluded.

(*Id.*).

The Court finds that remand is warranted because it is unable to meaningfully review the ALJ's reasoning that Diaz's diagnosed fibromyalgia was not a medically determinable impairment according to the guidance detailed in SSR 12-2p. *See Crowley v. Berryhill*, 2018 WL 5784513, *3 (W.D.N.Y. 2018) ("[i]t is well established that an ALJ's decision must set forth sufficient evidence and rationale in his or her decision to allow the [c]ourt to provide meaningful review of his or her findings"). Although the ALJ apparently acknowledged that Diaz suffered from "widespread" reports of pain and had "some fibromyalgia symptoms or co-occurring conditions," she dismissed the diagnosis according to the 1990 ACR Criteria because "there [was] no significant evidence of tender points," and dismissed the diagnosis according to the 2010 ACR Criteria because "there [was] no significant evidence that other disorders that could cause these symptoms ha[d] been excluded." (Tr. 13). These conclusory findings preclude meaningful review of the ALJ's step two findings.

As Diaz correctly notes, the record is replete with evidence that she experienced widespread pain in all quadrants of her body and axial skeletal pain, which is necessary under both the 1990 and 2010 ACR Criteria. *See* SSR 12-2p, 2012 WL 3104869 at *2-3; (*see*, *e.g.*, Tr. 367 (noting "generalized body aches and fatigue," specifically "reports [of] pain of shoulders, arms, back and legs bilaterally"); Tr. 482 (noting "increased pain – throughout body," specifically that Diaz's "shoulders, arms, back, bottom of feet feel sore with walking"); Tr. 574 ("[Diaz] complains of pain bilateral shoulders, elbows, hands, low back, knees and the tops of her feet"); Tr. 596 (neck pain); Tr. 630 (noting that "pain moves around, most pain in knees and shoulders – did have some lumbar pain too")).

8

Moreover, although there is no evidence that Diaz's doctors specifically tested for tender-point sites, the record does reflect that Diaz showed tenderness throughout her body on different occasions. (*See*, *e.g.*, Tr. 352 ("[t]ender to palp generally over head, all regions, including back of neck"); Tr. 367 ("[d]iffusely tender to palpation"); Tr. 374 ("[t]ender to minimal palpation over bilateral anterior tibia and knees"); Tr. 377 ("[tender to palpation] in shoulders, traps, hips, knees, ankles, wrists")). This evidence appears inconsistent with the ALJ's statement that Diaz exhibited no "significant evidence" of tender points (Tr. 13); moreover, the ALJ's decision does not discuss whether this evidence satisfied at least eleven out of the eighteen tender point sites pursuant to the 1990 ACR Criteria.

Although the ALJ seemingly accepted that Diaz satisfied the 2010 ACR Criteria requirement of at least six symptoms, signs, or co-occurring conditions of fibromyalgia, including, among other things, fatigue (*see*, *e.g.*, Tr. 367, 431, 476, 495), cognitive or memory problems (*see*, *e.g.*, Tr. 754, 865, 872, 885, 888), headaches and migraines (*see*, *e.g.*, Tr. 395, 495, 508, 754), gastroesophageal reflux disorder ("Gerd") (*see*, *e.g.*, Tr. 370, 395, 885), depression (*see*, *e.g.*, Tr. 408, 476, 866, 872, 891), and waking unrefreshed/sleeping issues (*see*, *e.g.*, Tr. 377, 431, 444, 476), see generally SSR 12-2p, 2012 WL 3104869 at *3 n.9, 10, 11, the ALJ concluded that Diaz did not show "*significant evidence* that other disorders that could cause these symptoms ha[d] been excluded." (Tr. 13 (emphasis supplied)). In reaching this conclusion, the ALJ appears to have imposed a heightened burden for the third prong of both the 1990 and 2010 ACR Criteria. Both of these methods require only "[e]vidence" that other disorders have been excluded – not, as the ALJ determined, "significant evidence." SSR 12-2p, 2012 WL 3104869 at *3. Here, as Diaz points out, the record reveals some evidence that her doctors performed tests to rule out other disorders that might have caused her symptoms. (*See*,

9

*e.g.*, Tr. 327, 367, 370, 377). Thus, this Court cannot conclude that the ALJ applied the correct legal standards at step two of the sequential analysis.

The Commissioner argues that "remand would not be appropriate even if the ALJ had erred in finding this impairment not severe" because the ALJ "found that [Diaz] had several other impairments that were severe and continued with the sequential evaluation process." (Docket # 14-1 at 25). Although the Commissioner is correct that "[a]n error at step two may be harmless if the ALJ identifie[d] other severe impairments at step two, proceed[ed] through the remainder of the sequential evaluation process and specifically consider[ed] the 'nonsevere' impairment during subsequent steps of the process," *see Wilson v. Colvin*, 2015 WL 1003933, *20 (W.D.N.Y. 2015), the ALJ's error in this case stemmed not from a *severity* conclusion, but from the conclusion that Diaz's fibromyalgia was not a *medically determinable impairment* based on the guidance in SSR 12-2p.

This distinction is critical because the step two harmless error doctrine is inapplicable to a determination that an impairment is not medically determinable. *See*, *e.g.*, *Cooper v. Comm'r of Soc. Sec.*, 2019 WL 1109573 at *5 (remanding for the ALJ to "properly evaluate" claimant's fibromyalgia under SSR 12-2p; "the ALJ's error in this case stemmed not from a severity conclusion, but from the conclusion that [claimant's] fibromyalgia is not even a medically determinable impairment[;] [t]his distinction is significant because an ALJ may credit a claimant's statements about her symptoms and functional limitations only if the impairment to which they relate is medically determinable[;] . . . [p]ut another way, because the ALJ concluded that [claimant's] fibromyalgia [was] not a medically determinable impairment, she had no basis to credit [claimant's] statements regarding her fibromyalgia-related symptoms in the remainder of her decision"); *Childs v. Colvin*, 2016 WL 1127801, *3-4 (W.D.N.Y. 2016) ("[i]n this case,

the ALJ did not determine that plaintiff's schizoaffective disorder was *non-severe*; rather, he concluded that she did not suffer from the disorder at all[;] . . . [t]he ALJ's failure to consider plaintiff's schizoaffective disorder at both steps two and three of the sequential evaluation process constituted reversible error, because a full consideration of plaintiff's disorder could have affected the outcome of her application"); *Casselbury v. Colvin*, 90 F. Supp. 3d 81, 94 (W.D.N.Y. 2015) (remanding at step two based on ALJ's rejection of fibromyalgia as a medically determinable impairment, and finding that such error was not harmless; "[h]ere, [the ALJ] did not consider the potential functional limitations as a result of [p]laintiff's fibromyalgia symptoms after discounting [p]laintiff's fibromyalgia as a medically determinable impairment, and accordingly, remand is warranted"); *Showers v. Colvin*, 2015 WL 1383819, *8 (N.D.N.Y. 2015) (harmless error doctrine not applicable to determination that impairment was not medically determinable; "[s]ince [the ALJ] found that [plaintiff's] claimed personality disorder, depression and anxiety were not medically-determinable abnormalities rising to the level of impairments, functional limitations attributable thereto were never considered at subsequent evaluative steps or when formulating [plaintiff's] residual functional capacity").

Accordingly, remand is necessary for the ALJ to properly evaluate Diaz's fibromyalgia at step two and, if necessary, at the remaining steps of the sequential evaluation process.

### B. Diaz's Remaining Contentions

As noted above, Diaz advances several other arguments she believes require remand. In light of the findings discussed above, however, the Court need not reach Diaz's remaining contentions. *See*, *e.g.*, *Cooper*, 2019 WL 1109573 at *5 (declining to address substance of claimant's alternative argument where remand was appropriate based on ALJ's

error in concluding at step two that claimant's fibromyalgia was not medically determinable impairment); *Keller v. Colvin*, 2017 WL 4112024, *14 (W.D.N.Y. 2017) ("[b]ecause remand is appropriate for further evaluation at step two, [the court] need not reach [claimant's] remaining contentions regarding other errors in the sequential evaluation").

## CONCLUSION

For the reasons stated above, the Commissioner's motion for judgment on the pleadings **(Docket # 14)** is **DENIED**, and Diaz's motion for judgment on the pleadings **(Docket # 10)** is **GRANTED** to the extent that the Commissioner's decision is reversed, and this case is remanded to the Commissioner pursuant to 42 U.S.C. § 405(g), sentence four, for further administrative proceedings consistent with this decision.

**IT IS SO ORDERED.**

                                                *s/Marian W. Payson*
                                                MARIAN W. PAYSON
                                              United States Magistrate Judge

Dated: Rochester, New York
       June 7, 2019